IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED

2011 MAR 21 ˈP 2: 36

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

| | |
|---|---|
| Rita Christine Smith )<br>Tennessee )<br>    Plaintiff )<br> )<br>v. )<br> )<br>United States of America )<br> )<br>    Service to: )<br> )<br>Neil H. MacBride )<br>U.S. Attorney, E.D.Va. )<br>2100 Jamieson Ave )<br>Alexandria, VA 22314 )<br> )<br>The Honorable Eric Holder )<br>U.S. Attorney General )<br>Department of Justice )<br>Room B-103 )<br>950 Pennsylvania Avenue N.W. )<br>Washington, D.C. 20530-0001 )<br> )<br>Former Secretary of Defense )<br>Donald Rumsfeld )<br>1718 M Street NW #366 )<br>Washington, DC 20036 )<br> )<br>Secretary of Defense Robert Gates )<br>Pentagon )<br>Arlington, VA 22202 )<br> )<br>    Defendants ) | CASE NUMBER 1:11cv287<br>LO /TCB |

## COMPLAINT

1.    This action seeks monetary damages under the Federal Tort Claims Act, 28

U.S.C. § 1346(b), for the Defendants' negligence in deterring, investigating, and prosecuting the

1

rape of Rita Christine Smith by Private Oliver Burnsed. Their negligence resulted in severe emotional distress and physical harm to the Plaintiff.

2.   This action also seeks monetary damages under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971) and *Davis v. Passman*, 442 US 228 (1979) for Defendants Gates' and Rumsfeld's deliberate indifference to rapes committed by and against servicemembers and their dependents. Defendants' acts and omissions violated Ms. Smith's Fifth Amendment rights to equal protection and bodily integrity.

## JURISDICTION AND VENUE

3.   This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b).

4.   Plaintiff have fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act.

5.   Venue is proper pursuant to 28 U.S.C. § 1391 *et seq*.

## PARTIES

6.   Plaintiff Rita Christine Smith is 31 years old. She is a resident of Tennnessee. She cannot disclose her address because she fears violent retaliation by her rapist.

7.   Defendant United States of America is the sovereign acting through the Department of the Army. Pursuant to Federal Rule of Civil Procedure 4(i), its agents for service of process are United States Attorney Neal H. MacBride, United States of Attorney for the Eastern District of Virginia, 2100 Jamieson Ave., Alexandria, Virginia 22314, and the Honorable Eric H. Holder, Jr., Attorney General of the United States of America, Department of Justice, Room B-103, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530-0001.

8. Defendant Donald Rumsfeld is the former Secretary of the United States Department of Defense. His business address is 1718 M Street NW #366, Washington DC 20036. Defendant Rumsfeld served as Secretary from 1975 to 1977, and again from 2001 until December 18, 2006. Defendant Rumsfeld's acts and omissions that led to this lawsuit occurred in this district.

9. Defendant Robert M. Gates is the Secretary of the United States Department of Defense. His business address is Pentagon, Arlington VA. Defendant Gates began serving as the Secretary on December 18, 2006, and continues to serve to date. Defendant Gates' acts and omissions that led to this lawsuit occurred in this district.

### THE PLAINTIFF'S RAPE AND ITS AFTERMATH

10. Rita Christine Smith married Jonathan Joseph Briggs, a member of the United States Army, in 2003. Briggs was a Sergeant, and served as a sniper with an infantry company before being discharged. He has done tours of duty in Iraq and Afghanistan.

11. In June 2006, Sgt. Briggs traveled from Colorado to California for training necessary prior to his departure to Iraq. At that time, the Plaintiff had just undergone surgery, and went to Tennessee to visit her family and recover from the surgery.

12. Plaintiff Smith initially stayed at her mother's house, and then stayed with Ms. Linda Burnsed, the mother of Oliver Burnsed. At that time, Oliver Burnsed was a friend of Sgt. Briggs and Plaintiff, and he had recently married Plaintiff's aunt. Oliver Burnsed was in the military, having joined after Jonathan Briggs joined. He was in an airborne division.

13. In July 2006, Oliver Burnsed raped the Plaintiff.

14. Plaintiff Smith, still recovering from surgery, had taken prescribed anti-nausea and pain medication which made her very drowsy. When she woke up, Oliver Burnsed was on

top of her, raping her. He pinned her down so that she could not move. She repeatedly begged him to stop. He initially disregarded these pleas, then eventually stopped.

15. Ms. Smith called the Rape Prevention Crisis Center and travelled to the Center in Tennessee, and after extensive counseling, summoned up the strength to report the rape.

16. Ms. Smith, knowing both her husband and attacker were active duty in the military, reported the rape to the military authorities. She believed in good faith that she was obliged to use the military judicial system for crimes committed by military personnel.

17. Ms. Smith reported the rape at Fort Stewart, Georgia, which she believed was the Army base closest to the incident.

18. She first reported the rape to Regina Mims, the installation victim advocate at Fort Stewart. Ms. Mims referred her to Mrs. Beth Wilkinson, a social worker, who referred her to a military hospital for medical examination. She was told that a sexual assault counselor would meet her at the hospital, but none did so. This was a violation of military regulations.

19. Defendants failed to provide Ms. Smith with a female clinician to conduct a medical examination after the rape, instead forcing Ms. Smith to be examined by a male Physician's Assistant. Ms. Smith begged to be examined by a female doctor, but was told that there was none on duty, and she would have to permit a male to conduct a pelvic examination if she wanted to press charges. The male physician's assistant who conducted the examination did not use a rape kit, nor did he provide testing for sexually transmitted diseases.

20. Regina Mims and Beth Wilkinson failed to report the rape to either military or civilian law enforcement, in violation of military regulations. They also failed to inform Ms.Smith of the options and procedures for reporting the rape to military command or civilian

law enforcement, and failed to follow up with her for further services, also in violation of military regulations.

21. After making that initial report, Ms. Smith was told to go by military officials a few days later to go to Hunter Army Airfield, in order to speak to a financial counselor regarding assistance with the expenses of travelling to Fort Stewart. She again reported the rape and even spoke to the Garrison commander and Sgt. Major about the rape.

22. Ms. Smith had to report the rape a third time, to a victim advocate in Fort Carson, Colorado, before the military began a criminal investigation.

23. Defendants repeatedly placed Ms. Smith in situations where she was forced to recount, again and again, the fact that she had been raped in order to obtain the necessary emergency assistance and medical treatment.

24. Throughout the investigative and prosecutorial process, Ms. Smith was demeaned and insulted by those who were supposed to be prosecuting her attacker.

25. As the matter was being investigated, the Army Criminal Investigation Division ("CID") agent interviewing Ms. Smith made a serious mistake in the transcription of her statements, noting that Ms. Smith had been raped on the Thursday before the Thursday on which the rape actually occurred. Ms. Smith learned about the mistake only shortly before the scheduled trial.

26. At trial, military prosecutor Margaret Kurz required Ms. Smith to construct her own chronology of events based on airline tickets and other contemporaneous documentation. She had to testify that the "official" chronology prepared by the CID agent was simply off by one week.

5

27. Defendants acted incompetently at every step of the way. They failed to schedule the trial promptly, failed to convene the trial when scheduled, failed to thoroughly investigate the case and interview witnesses, and failed to call critical witnesses at trial. They also failed to protect Ms. Smith from additional possible harm from her attacker during the trial process by leaving her alone at times when Burnsed was able to talk freely to Ms. Smith.

28. Defendants negligently failed to introduce a key piece of physical evidence at trial. On September 7, 2006, CID took from Ms. Smith the underwear she had been wearing at the time of the rape, which provided physical evidence that Burnsed had ejaculated during the rape. Before and during the May 2008 trial, Ms. Smith asked the military prosecutor several times whether the underwear would be introduced as physical evidence. The prosecutor responded that it had been "lost".

29. At trial, Burnsed testified in a manner inconsistent with the physical evidence on Ms. Smith's "lost" underwear. But the military prosecutor could not effectively cross-examine him because the military had "lost" the underwear.

30. As a result of the Defendants' negligent actions and omissions, Burnsed was improperly acquitted.

31. On August 26, 2008, after the military had wholly bungled the rape prosecution, Ms. Smith received a telephone call from Agent Alvarado, Criminal Investigative Division agent stationed in Fort Carson, Colorado.

32. Agent Alvarado informed Ms. Smith that she could come retrieve the "evidence" in Defendants' possession in Fort Carson, Colorado. When Ms. Smith asked what he was talking about, Agent Alvarado told her that CID had a pair of women's underwear.

6

33. In a subsequent phone call, Agent Alvarado told Ms. Smith that he had spoken to the military prosecutor, who claimed she had never told Ms. Smith that the underwear was lost.

34. Ms. Smith traveled to Fort Carson, and retrieved the underwear with assistance from private investigators, who have maintained the underwear in safekeeping.

35. At no time throughout Ms. Smith's harrowing ordeal was she advised that she could have opted to have the rape prosecuted by civilian, rather than military, law enforcement authorities

36. Defendants' incompetence resulted in Ms. Smith's violent, mentally disturbed, and potentially vengeful attacker Burnsed to be free and able to harm Ms. Smith if he so chooses.

37. Ms. Smith has been forced to keep herself hidden, and does not provide her address to others because she continues to fear retaliation.

38. Defendants' acts and omissions inflicted and continues to inflict severe and lasting emotional distress.

39. This emotional distress has had severe physical consequences, causing Ms. Smith to be unable to eat and to frequently vomit. Her weight, which was 135 pounds before the rape, had dropped to 85 pounds. In 2008, Ms. Smith was hospitalized for malnutrition.

40. On July 30, 2010 Ms. Smith filed an administrative claim against United States with the Department of the Army pursuant to the Federal Tort Claims Act.

41. The Army denied the claim on September 22, 2010.

### THE DEFENDANTS' DELIBERATE INDIFFERENCE TO RAPE AND SEXUAL ASSAULT

42. Rape and sexual assault committed by and against servicemembers and their spouses is endemic in the military.

43. According to the Department of Defense, in 2006, the Services received nearly 3,000 total reports of alleged sexual assault involving members of the Armed Forces as either the subject or the victim, an increase of 24% from 2005.

44. Rapes and sexual assaults are widespread at the academies, which are the training grounds for military leaders. According to the 2009 *Annual Report on Sexual Assaults in the Military*, there were 41 reports of sexual assault in the academies in fiscal year 2009. The Department of Defense estimated that this reported number represents less than ten percent of the actual unwanted sexual contacts. 2009 *Annual Report on Sexual Assaults in the Military.*

45. In 2007, only eight percent of those accused of rape or sexual assault were court martialed. The remainder confronted only "non-judicial punishment" or no consequences whatsoever. This is in part because the Department of Defense permits Commanders to make judicial decisions.

46. The Department of Defense fails to report conviction rates from courts martial, which is critical data needed by Congress to assess whether reforms are being implemented. *See* February 24, 2010, Statement for the Record by the Honorable Louise M. Slaughter (D-N.Y.), submitted to the Committee on Oversight and Government Reform, Subcommittee on National Security and Foreign Affairs, for Hearing -- Sexual Assault in the Military Part IV: Are We Making Progress?

47. The Department of Defense routinely retaliates against service members who report rapes and sexual assaults by other members of the military. Service members who report rapes are routinely branded "troublemakers" and deprived of any opportunities for career advancement. Many lose their security clearances as a result of seeking assistance from the military medical system to handle the emotional aftereffects of being raped and assaulted.

48. For example, in 2007, Marine Lance Corporal Lauterbach was raped by a fellow Marine. When she reported the rape, "she was met with skepticism, if not outright disbelief, by her superiors and met with harassment and ostracism by her male fellow Marines. . . .That six-month nightmare ended when she was murdered and buried in a shallow fire pit in the backyard of fellow Marine Cpl. Cesar Laurean." *See Written Statement of Merle F. Wilberding, February 24, 2010, House Committee on Oversight and Government Reform.* Mr. Wilberding's Statement describes the experiences of other victims.

49. As a result of this hostile environment, the Department of Defense estimates that only 20 percent of servicemembers who experience "unwanted sexual contact" report the matter to a military authority. *See 2009 Annual Report on Sexual Assaults in the Military.*

50. The Department of Defense destroys evidence gathered during forensic examination after only one year from its collection date if the victim has chosen to use the restricted reporting system. 2009 *Annual Report on Sexual Assaults in the Military at 5.*

51. Rapes and sexual assaults continue to occur at increasing rates because the top leadership - namely, Defendants Gates and Rumsfeld – failed to challenge the misogynistic military culture that prevented the various programs from being fully implemented. Instead, Defendants Gates and Rumsfeld delegated the entire problem to a single small office called the Sexual Assault and Prevention and Response Office. The head of this office, Dr. Kaye Whitley, has no military rank and no authority over military commanders.

52. Only the individual defendants had and have the power and position to change the military culture that permits widespread rape and sexual assaults. Neither Defendant Gates nor Rumsfeld used their power and position to do so. Their deliberate indifference violated Plaintiff's Constitutional rights.

53. In 2002, Defendant Rumsfeld was advised by the Veterans Administration that twenty percent of female veterans had been subjected to sexual assaults inflicted by their fellow soldiers.

54. In 2004, Congress passed Public Law 105-85, which required the Secretary of Defense to establish a commission to investigation policies and procedures with respect to the military investigation of reports of sexual misconduct. Defendant Rumsfeld ignored this Congressional directive and failed to appoint any members of the commission. Defendant Rumsfeld resigned without having appointed any members of the task force, and without directing the task force to begin its work.

55. On March 31, 2004, Members of Congress wrote to Defendant Rumsfeld expressing concern that then-Secretary of Defense Rumsfeld had ignored the recommendations made in 18 reports issued over the previous 16 years. The Members stated, "[w]e are concerned that the problem of sexual misconduct in the military is repeatedly investigated, but recommendations for substantive change in the reports are often ignored." Reasonable discovery will show that Defendant Rumsfeld expressed scorn and derision towards Congressional efforts to eradicate sexual assault in the military. Defendant Rumsfeld's inaction sent a message that the military was resisting efforts Congressional oversight efforts designed to change a military culture where rape, sexual assault and sexual harassment were not prosecuted or otherwise deterred.

56. Defendant Rumsfeld repeatedly permitted military Command to rely on the Article 15 (nonjudicial punishment) process for allegations involving rapes, sexual assaults, and sexual harassment.

57. Defendant Rumsfeld repeatedly permitted military Command to interfere with the impartiality of criminal investigations.

58. Defendant Rumsfeld repeatedly permitted the military Command to charge those alleged to have raped or sexually assaulted a co-worked under UCMJ Article 134 (adultery) rather than under Article 120 (rape).

59. Defendant Rumsfeld repeatedly ensured that the military, not the civilian authorities, investigated and prosecuted charges of rape and sexual assault. Defendant Rumsfeld did so knowing that the military judicial system prosecutes only eight percent of those alleged to have engaged in rape or sexual assault, as compared to the civilian system, which prosecutes forty percent of those alleged to be such perpetrators. Defendant Rumfeld's conduct caused the Plaintiff to use the dysfunctional military judicial system instead of the civilian system.

60. Defendant Rumsfeld permitted eighty percent of those military personnel convicted of sex crimes to be honorably discharged from the military and receive their full retirement benefits.

61. Defendant Rumsfeld repeatedly permitted military Command to retaliate against those servicemembers who reported being raped, assaulted and harassed. Reasonable discovery will show that Defendant Rumsfeld did not make any efforts to eliminate retaliation against servicemembers who reported being raped, assaulted and harassed.

62. Defendant Rumsfeld authorized acceptance of recruits who have been arrested or convicted of domestic violence and sexual violence through a process of "moral waivers," because such recruits could not have enlisted under the minimum requirements without such a waiver. The Lautenberg Amendment to the Gun Control Act makes it a felony for anyone convicted of a crime of domestic violence to ship, receive or possess firearms or ammunition.

The Amendment does not provide any exception that permits the military or law enforcement to ignore its prohibitions. Yet Defendant Rumsfeld knowingly granted "waivers" that permitted individuals convicted of domestic violence-related charges to join the services and carry weapons. See Department of Defense Task Force on Domestic Violence: Initial Report 53 (2001). Defendant Rumsfeld intentionally permitted such felons to serve in the military, which sent a clear message to his subordinates that preventing sexual violence was not a high priority.

63. Defendant Rumsfeld's acts and failures to act during his tenure as Secretary of Defense led to a dramatic increase in the number of rapes and sexual assaults committed by service members. Defendant Rumsfeld's acts and failures led to Burnsed being permitted to enlist when he should not have been.

64. By the year of his resignation (2006), Defendant Rumsfeld's acts and failures to act had led to a **twenty-four percent** increase in the rate of rapes and sexual assaults when compared to the prior year (2005).

65. Defendant Gates violated Plaintiff's constitutional rights by failing to take reasonable steps to prevent Plaintiff Smith and other victims from being raped and sexually assaulted by federal military personnel.

66. Defendant Gates repeatedly permitted military Command to use nonjudicial punishment for rapes, sexual assaults, and sexual harassment, and to otherwise interfere in impartial investigations. Reasonable discovery will show that Defendant Gates did not make any efforts to eliminate the use of nonjudicial punishment and Command interference into investigations.

67. Defendant Gates repeatedly permitted military Command to retaliate against those servicemembers who reported being raped, assaulted and harassed. Reasonable discovery will

show that Defendant Gates did not take reasonable steps that should have been taken to eliminate retaliation against servicemembers who reported being raped, assaulted and harassed.

68.     Defendant Gates interfered with and opposed Congressional directives designed to eliminate rape and sexual assault in the military. In July 2008, the Congressional House Oversight Committee on National Security and Foreign Affairs subpoenaed Dr. Kaye Whitley to testify on July 31, 2008, about her office's efforts to eradicate sexual assault. Defendant Gates and his subordinates directed Dr. Whitley to ignore the subpoena, which she did. As stated by the Chair of the Committee at the subsequent hearing, "But what kind of a message does her and the Department's unwillingness until now to allow testimony send to our men and women in uniform? Do they take Dr. Whitley's office seriously? Is she being muzzled, or is the Department hiding something?" *See Hearing on Sexual Assault in the Military – Part II, Subcommittee on National Security and Foreign Affairs, Serial No. 110-188 (September 10, 2008).*

69.     Defendant Gates' failures to act during his ongoing tenure as Secretary of Defense led to a steady and dramatic increase in the number of rapes and sexual assaults among active duty servicemembers. In 2008, the rate of rapes and sexual assaults within the active duty military increased by **nine** percent compared to the rate in 2007. In addition, the 2008 rate of rapes and sexual assaults against servicemen and servicewomen serving in combat areas (primarily Iraq and Afghanistan) rose by **twenty-five** percent compared to the rate in 2007. In 2009, the rate of rapes and sexual assaults within the active duty military increased by **eleven** percent compared to the rate in 2008, with a **sixteen** percent increase in the rates of rape and sexual assault among those deployed to combat areas.

70.     Defendant Gates is well aware that the military continues to retaliate against those who report rape, sexual assault and sexual harassment. The annual report published on August 24, 2010, admitted that military personnel refrain from reporting rape and sexual assault because doing so is perceived as having "lasting career and security clearance repercussions."

### COUNT ONE AGAINST THE UNITED STATES
### NEGLIGENCE

71.     The preceding paragraphs are hereby incorporated in full by reference.

72.     The United States had a legal duty to deter, investigate, and punish rapes by members of the military.

73.     The United States violated that duty through its negligent actions and omissions in supervising the Plaintiff's rapist and investigating and prosecuting the Plaintiff's rape.

74.     The United States' negligence caused injury to the Plaintiff.

### COUNT TWO AGAINST THE UNITED STATES
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75.     The United States had a legal duty to investigate, and punish rapes by members of the military.

76.     The United States breached that duty through its negligent actions and omissions in investigating and prosecuting the Plaintiff's rape.

77.     The United States' negligence proximately caused the rapist's acquittal, causing severe emotional distress and physical harm to Plaintiff.

### COUNT THREE AGAINST THE INDIVIDUAL DEFENDANTS
### SUBSTANTIVE DUE PROCESS

78.     The preceding paragraphs are hereby incorporated in full by reference.

79.     The Plaintiff possesses a right to bodily integrity under the Fifth Amendment.

80. Defendants condoned a culture which allowed sexual harassment, sexual assault and rape by military personnel, which resulted in the Plaintiff's rape and the acquittal of her rapist.

81. Defendants' actions and failures to act violated the Plaintiff's substantive due process rights under the Fifth Amendment.

### COUNT FOUR AGAINST THE INDIVIDUAL DEFENDANTS
### EQUAL PROTECTION

82. The preceding paragraphs are hereby incorporated in full by reference.

83. The Plaintiff has a right to equal protection under the law, including protection from discrimination on the basis of sex, under the Fifth and Fourteenth Amendments.

84. Defendants condoned a pattern of sexual harassment, rape and sexual assault; failed to protect servicemembers and military spouses from rape, sexual assault, and sexual harassment; failed to conduct proper investigations and prosecute offenders; discriminated on the basis of gender; and encouraged a culture of sexism and misogyny which allowed members of the military to rape women with impunity.

85. Defendants violated Plaintiff's right to equal protection under the under the Fifth and Fourteenth Amendments.

### JURY DEMAND

Plaintiff requests a jury trial.

### PRAYER FOR RELIEF

Plaintiff seeks compensation for her injuries in excess of $10,000, including compensatory damages, punitive damages, attorney's fees and costs, and such other relief as the Court and Jury deem just and proper.

                                                  /s/ Susan L. Burke
                                            Susan L. Burke (VA Bar No. 27769)
                                            Counsel for Plaintiff
                                            BURKE PLLC
                                            1000 Potomac Street, N.W.
                                            Washington, DC 20007-1105
                                            Telephone: (202) 386-9622
                                            Facsimile: (202) 232-5513
                                            sburke@burkepllc.com

Date: March 21, 2011